IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EDWARD HERRING, et al.,

    Plaintiffs,

    v.

BERKSHIRE HATHAWAY
HOMESTATE INSURANCE
COMPANY, et al.,

    Defendants.

CIVIL ACTION FILE NO.:
1:18-cv-4711-WMR

## <u>ORDER</u>

This is a personal injury action arising from a two-vehicle collision that occurred on Interstate 75 in 2017. The case is presently before the Court on Defendants' Motion for Partial Summary Judgment [Doc. 58] and Defendants' Motion to Exclude the Testimony of Plaintiffs' Expert Brian Stevens [Doc. 57]. Specifically, Defendants Berkshire Hathaway Homestate Insurance Company ("BHHIC"), Linda Binkley d/b/a Double L Produce, and Jerry Binkley seek to exclude the testimony of Plaintiffs' commercial trucking industry expert Brian Stevens; seek judgment as a matter of law on Plaintiffs' claims for negligent hiring, training, retention, supervision, and entrustment, and negligence per se; seek judgment as a matter of law on Plaintiffs' claims for punitive damages against

1

Double L and Jerry Binkley; and seek judgment as a matter of law on Plaintiffs'

claims for attorneys' fees pursuant to O.C.G.A. § 13-6-11 against BHHIC, Double

L, and Jerry Binkley.[1]  Plaintiffs filed responses to both motions.  [See Docs. 60,

62, 63].

The Court heard oral argument on both motions during a hearing via

ZOOM on June 18, 2020.  This Court will begin by addressing Defendants'

Motion for Partial Summary Judgment [Doc. 58] and conclude by analyzing

Defendants' Motion to Exclude [Doc. 57].

## I.    MOTION FOR PARTIAL SUMMARY JUDGMENT

As outlined above, Defendants have moved for summary judgment on

Plaintiffs' claims for (1) negligent hiring, training, retention, supervision, and

entrustment; (2) negligence per se; and (3) punitive damages against Double L and

Jerry Binkley, and attorneys' fees pursuant to O.C.G.A. § 13-6-11 against BHHIC,

Double L, and Jerry Binkley.[2]  Upon due consideration of the parties' briefs, oral

argument, and all applicable law, and for the reasons that follow, this Court finds

---

[1] The Court notes that Defendant J.L. Binkley & Sons, Inc., did not join in bringing
the present Motion for Partial Summary Judgment.  Accordingly, for purposes of
this Order, the Court will not address arguments related to Defendant J.L. Binkley
& Sons, Inc.

[2] The record is less than clear as to whether Double L is a sole proprietorship
owned solely by Linda Binkley or a partnership owned by Linda Binkley and Jerry
Binkley

that Defendants are not entitled to partial summary judgment.  As such, Defendants' Motion for Partial Summary Judgment [Doc. 58] is hereby **DENIED**.

### A.    SUMMARY JUDGMENT STANDARD

When the parties' pleadings, affidavits, and other discovery materials establish that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law, summary judgment should be granted. Fed. R. Civ. P. 56(a).  The moving party bears the burden of showing the absence of a genuine issue of material fact when viewing the evidence in the light most favorable to the nonmovant.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  After a motion for summary judgment has been properly supported, the nonmovant must present affirmative evidence "from which a reasonable jury might return a verdict in his favor" and that demonstrates the presence of "a genuine issue of fact that requires a trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### B.    FACTUAL FINDINGS

On July 15, 2017, a tractor-trailer operated by Mr. Binkley collided with Plaintiffs' Chevrolet Tahoe on Interstate 75 in Cartersville, Georgia.  [Doc. 58-2 ¶ 1; Doc. 63 ¶ 1].  The tractor-trailer that Mr. Binkley was operating was owned by J.L. Binkley & Sons, Inc., which had leased its use to Double L.  [Doc. 58-2 ¶ 2;

Case 1:18-cv-04711-WMR   Document 89   Filed 09/24/20   Page 4 of 24

Doc. 63 ¶ 2].

On the date of the collision, Mr. Binkley was traveling northbound on I-75 in the right lane when he swerved into the middle lane where Plaintiff Renee Herring was operating her vehicle.  [Doc. 58-2 ¶¶ 8-10; Doc. 63 ¶¶ 8-10].  Mr. Binkley's tractor-trailer collided with Plaintiffs' vehicle, causing it to strike the median guardrail and overturn.  [*Id.*].  Mr. Binkley testified that he never saw Plaintiffs' vehicle before striking it and cannot explain how or why the collision occurred.  [Doc. 58-2 ¶ 11; Doc. 63 ¶ 11].  In this lawsuit, Plaintiffs are alleging that they sustained serious and permanent injuries as a result of the collision. Following the collision, Mr. Binkley received a citation for failure to maintain lanes.  [Doc. 58-2 ¶ 12; Doc. 63 ¶ 12].

Plaintiffs contend that the collision occurred due to Defendants' violations of the Federal Motor Carrier Safety Regulations ("FMCSRs"), as well as state laws governing the operation of commercial motor vehicles.  Plaintiffs allege that Defendants Double L, J.L. Binkley & Sons, Inc., and Jerry Binkley qualify as "motor carriers" under the FMCSRs (hereinafter collectively "MCDs" for "Motor Carrier Defendants") and that Mr. Binkley qualifies as both a motor carrier and a driver under the FMCSRs.  As such, Plaintiffs allege various failures by the MCDs in their capacity as "motor carriers."  Plaintiffs allege generally that

Defendants had no knowledge of the FMCSRs, and, therefore, did not and could not meet the minimum safety requirements. Plaintiffs then set forth several FMCSRs that Plaintiffs claim the MCDs intentionally and negligently violated in relation to hiring, training, retention, supervision, and entrustment. These specific violations are discussed more thoroughly below.

Defendants challenge claims regarding whether Mr. Binkley had sleep apnea and whether spoliation allows the inference that Mr. Binkley was intoxicated by alcohol and/or drugs at the time of the collision. Defendants also claim that there is no evidence that Mr. Binkley was impaired due to medical conditions and/or fatigued when the collision occurred.[3] With regard to Plaintiffs' claims regarding Mr. Binkley's health, the parties appear to agree that, on the date of the collision, Mr. Binkley was taking Norco (hydrocodone) and Sinemet, a prescription for his tremor disorder. The parties also agree that Mr. Binkley, pursuant to federal law, was required to undergo a drug and alcohol test after the collision, which he failed to do.

---

[3] The Court notes that Plaintiffs provided a weblink to a police dash camera video that shows Mr. Binkley walking unsteadily and reveals some concerns voiced by the investigating police officer that Mr. Binkley might fall down. To the extent that Defendants rely on the police report as evidence in support of their Motion regarding Mr. Binkley's health, the video seems to cast some doubt on that reliance.

## C.    DISCUSSION

Defendants move for summary judgment on Plaintiffs' claims for negligent hiring, training, retention, supervision, and entrustment, punitive damages pursuant to O.C.G.A. § 51-12-5.1(b), attorney's fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11, and negligence per se.  Because Defendants Double L is admitting respondeat superior, Plaintiffs' negligent hiring, training, supervision, retention, and entrustment claims against Double L can only survive summary judgment if there is "a valid claim for punitive damages against the employer based on its independent negligence in hiring and retaining the employee or entrusting a vehicle to such employee."[4]  *Durben v. Am. Materials*, 232 Ga. App. 750, 751 (1998).

### 1.    Plaintiffs' Negligent Hiring, Training, Retention, Supervision, and Entrustment Claims

The Court will first analyze whether Plaintiffs have presented sufficient

---

[4]  As noted above, Defendant J.L. Binkley & Sons, Inc., is not seeking relief in this Motion and is apparently not admitting respondeat superior.  Therefore, to the extent that Plaintiffs can show that Defendant J.L. Binkley & Sons, Inc., is liable for the collision, Plaintiffs' claims against Defendant J.L. Binkley & Sons, Inc., for negligent hiring, training, retention, supervision, and entrustment are unaffected by this Order.  However, in no way does the Court mean to suggest that Defendant J.L. Binkley & Sons, Inc. could have such liability, as it does not appear to have been an employer of Mr. Binkley.

evidence to support their negligent hiring, training, retention, supervision, and entrustment claims, and then determine if those facts present the necessary amount of culpability to support Plaintiffs' punitive damages claim.   "The appropriate standard of care in a negligent hiring/retention action is whether the employer knew or should have known the employee was not suited for the particular employment."   *Patterson v. Se. Newspapers, Inc.*, 243 Ga. App. 241, 245 (2000) (quoting *Kemp v. Rouse-Atlanta*, 207 Ga. App. 876, 878 (1993)).

The FMCSRs "establish minimum qualifications for persons who drive commercial motor vehicles as, for, or on behalf of motor carriers" and "establish minimum duties of motor carriers with respect to the qualifications of their drivers."   49 C.F.R. § 391.1(a).   The MCDs admit that their businesses are governed by the FMCSRs.   In their Response, Plaintiffs presented numerous alleged violations of the FMCSRs by the MCDs.   Specifically, Plaintiffs presented evidence that the MCDs: failed to investigate Mr. Binkley's safety performance with DOT-regulated employers for the 3-year period before he was hired in violation of 49 C.F.R. § 391.23(a)(2); failed to perform a pre-employment drug test as required by 49 C.F.R. § 382.301(a); failed to perform required random drug and alcohol tests in violation of 49 C.F.R. § 382.305; failed to obtain Mr. Binkley motor vehicle record ("MVR") within thirty days of his employment as

7

required by 49 C.F.R. § 391.23(a); failed to perform annual driver inquiries and reviews in violation of 49 C.F.R. § 391.25; permitted Mr. Binkley to operate their tractor-trailer when he was not physically qualified to drive in violation of 49 C.F.R. §§ 391.11; permitted Mr. Binkley to operate their tractor-trailer while his ability was so impaired or likely to become impaired through fatigue, illness, or any other causes as to make it unsafe for him to operate a commercial motor vehicle in violation of 49 C.F.R. § 392.3; permitted Mr. Binkley to operate a commercial vehicle while under the influence of any substance that rendered him incapable of safely operating a tractor-trailer in violation of 49 C.F.R. § 392.4(a)(4); and permitted Mr. Binkley to operate a tractor-trailer while taking narcotics without the required authorization in violation of 49 C.F.R. § 392.4(a)(3).  [*See* Doc. 62].  Plaintiffs also allege willful concealment and fraudulent conduct by the MCDs and Mr. Binkley, as a driver, in the formation of their businesses and in relation to the completion of Mr. Binkley's medical examination certificates.

Defendants claim that the negligent hiring claims regarding Mr. Binkley's driving and safety history are irrelevant since Mr. Binkley is the owner of each of these businesses and knows his own safety record.  The Court agrees with such contention in so far as Mr. Binkley is concerned, but if Double L is owned in

whole or in part by Ms. Binkley, that is a different matter.  The FMCSRs make it clear that owner-operators must abide by the rules established for drivers and for motor carriers.[5]  49 C.F.R. § 391.1(b).  Indeed, it is certainly possible or even likely that Ms. Binkley would also had known of both her husband's driving record and his health condition.  But, if not, the failure of Ms. Binkley to have Double L comply with these federal regulations is of particular concern.

Defendants also contend that if the MCDs had abided by the required driver history investigation, they would have only found three citations in the three years before Mr. Binkley was hired by Double L in 2014.  However, Plaintiffs presented over 25 violations of the FMCSRs in 2013 as shown by certified records from the Federal Motor Carrier Safety Administration.  [Doc. 62 at 5-6; Doc. 62-5 at 4-22].  Plaintiffs also presented evidence of a 2013 collision in Cobb County, Georgia, where Mr. Binkley was required by the FMCSRs to undergo a drug and alcohol test after the collision.  Mr. Binkley admitted that he did not undergo the required drug and alcohol test.  [Doc. 63 ¶¶ 30-31].  From the record before the Court, it does not appear that Double L made any inquiry about the 2013 collision or post-

---

[5]  49 C.F.R. § 391.1(b) provides: "An individual who meets the definition of both a motor carrier and a driver employed by that motor carrier must comply with both the rules in this part that apply to motor carriers and the rules in this part that apply to drivers."

collision testing when it hired Mr. Binkley in 2014.   Pursuant to 49 C.F.R. § 382.211, a motor carrier "shall not permit a driver who refuses to submit to [alcohol or controlled substances] tests to perform or continue to perform safety-sensitive functions."   Double L never addressed this issue when it hired Mr. Binkley, nor did Double L perform a pre-employment drug and alcohol test or random drug and alcohol tests on Mr. Binkley during his employment.   So, as Ms. Binkley already knew about Mr. Binkley's troubling history or she would have known had she caused Double L to employ sufficient background or drug tests, then she cannot escape potential liability therefor.   These facts, which appear to be unchallenged, support Plaintiffs' claims that the MCDs did not abide by the FMCSRs when they hired and retained Mr. Binkley and were, therefore, possibly negligent.

Plaintiffs further contend that Mr. Binkley knowingly concealed his medical conditions from the medical examiners issuing his medical certificates. Plaintiffs have presented undisputed evidence that Mr. Binkley had a plethora of medical conditions that he was required to identify on the health history portion of his Medical Examination Reports.[6]  Based on the evidence presented by Plaintiffs,

---

[6] Commercial drivers are required to have a current Medical Examiner's Certificate in order to operate a commercial vehicle.  49 C.F.R. § 391.41.

Mr. Binkley failed to identify his long-standing neurologic disorder, chronic back pain and spinal disorder, loud snoring, and digestive problems on the Health History portion of his Medical Examination Reports, including the one issued in 2016 which is the relevant Medical Examiner's Certificate for the subject collision.  [*See* Doc. 62-8].  The form required Mr. Binkley to check "yes" next to the boxes for the medical conditions which apply to him before undergoing the examination with the medical examiner.  [*Id*. at 6].[7]  His falsely certified answers on these medical forms, if he also owned Double L, means that the MCDs knew their employee-driver was failing to report and was concealing his medical conditions from the medical examiner.   Based on this evidence, the jury could find that these failures were intentional by the MCDs since they are repeated on many of Mr. Binkley's medical certificates.   The Health History portion of the Medical Examination Report also states that "inaccurate, false or missing information may invalidate the examination and [the] Medical Examiner's Certificate," which if invalidated would mean Mr. Binkley was not qualified to operate a commercial motor vehicle when the collision occurred.  [*Id*.].   The MCDs' knowledge of these medical conditions and the failure to communicate

---

[7] The Health History section required Mr. Binkley to certify that the information was accurate or risk invalidating his Medical Examiner's Certificate.  [Doc. 62-8].

these conditions to the medical examiner indicate that the MCDs violated the requirement that they only permit drivers who are "physically qualified to drive a commercial motor vehicle."  49 C.F.R. § 391.11.

Additionally, there is evidence that Mr. Binkley's physical limitations were so great that he obtained a permanent handicap placard in Indiana in 2012.  [Doc. 62-10].  Mr. Binkley apparently obtained this placard because he had pain and/or difficulty traversing parking lots of stores.  [Doc. 62-11 at 24:3-25].  Based on that alone, a jury could conclude Mr. Binkley was not physically qualified to operate a tractor-trailer and to perform all the required inspections of that tractor-trailer while driving across the country.  This evidence, viewed in the light most favorable to Plaintiffs, is sufficient to put the issue of whether the MCDs intentionally or negligently placed a driver on the public roadway who was not physically qualified to operate a tractor-trailer in violation of the FMCSRs.

Moreover, Defendants concede that Mr. Binkley was taking two prescription medications on the date of the collision: Sinemet and Norco.  [Doc. 58-2 ¶¶ 16, 20-21].  Norco is a narcotic that Mr. Binkley did not start taking until after he received his 2016 Medical Examiner's Certificate.  [*Id.*].  There is no evidence in the record that Mr. Binkley discussed with his physicians whether he could operate a tractor-trailer while under the influence of Norco.  49 C.F.R. §

392.4(a)(3) states that "[n]o driver shall be on duty and possess, be under the influence of, or use . . . [a] narcotic drug or any derivative thereof" unless the driver has obtained advice from a licensed medical practitioner that it is safe for the driver to operate a tractor-trailer.   Additionally, motor carriers "shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle."   49 C.F.R. § 392.3.[8]   The evidence presented to this Court is sufficient to permit a jury to find that Mr. Binkley was under the influence of a narcotic drug without the required medical advice and that the MCDs entrusted their tractor-trailer to him when they knew that Mr. Binkley was under the influence of a narcotic.  The evidence also indicates that, based on the possible side effects of the two prescription drugs and their possible interaction with each other, a jury might find that Mr. Binkley was impaired when the subject collision occurred.

---

[8] With relation to whether Mr. Binkley's ability or alertness may have been impaired, Plaintiffs have presented evidence that Sinemet potentially causes the following serious side effects:  suddenly falling asleep without warning (including operation of motor vehicles), blurred vision, fatigue, and dizziness.   Sinemet further warns that the consumer "should be advised to exercise caution while driving or operating machines."  [Doc. 62-14 at 4].  Plaintiffs also presented evidence that Mr. Binkley was taking more Sinemet than his doctor advised.  [Doc. 62-11 at 18:2-20].

Defendants argue that even if there were acts or omissions in relation to negligent hiring or retention, they were not the proximate cause of the subject collision.  However, the Georgia Court of Appeals has found much less evidence to be sufficient for a jury to find that the negligence of the employer was a proximate cause of a collision.   Specifically, in *Smith v. Tommy Roberts Trucking Co.*, 209 Ga. App. 826, 830 (1993), the Court held that:

> If the jury finds the employer knew or, in the exercise of reasonable care or exercise of the duty imposed upon it by law, should have known of the driver's unfavorable driving record we cannot say as a matter of law that the jury could not find such negligence concurred with the negligence of the driver as a proximate cause of plaintiff's injuries. If the jury finds the employer should have known the driver was an unsafe driver, then the jury could also find that the employer's permitting him to drive the company-owned truck was a proximate cause of the collision.

*Id*.  Plaintiffs have presented a question of fact as to whether Mr. Binkley was qualified to operate a tractor-trailer and that Double L, through either Mr. Binkley and/or Ms. Binkley, knew or should have known as much.  Thus, based on that evidence, the jury could find that by allowing him to drive anyway, the MCDs' acts and omissions were a proximate cause of the collision.

Further, this Court finds that Plaintiffs have shown a sufficient nexus between the MCD's negligence and the cause of the subject collision. Mr. Binkley testified that he never saw Plaintiffs' vehicle before he collided with it,

14

and he also testified that he had no intention of changing lanes when he swerved into their lane causing the collision.   Viewed in the light most favorable to the non-movants, the Court finds that the jury could determine that Mr. Binkley's medical conditions, physical limitations, and the effects of the medications or substances he was taking caused or contributed to the subject collision.   Mr. Binkley, who has been a commercial driver for more than 50 years, was unable to explain why he did not see a vehicle in the lane to his left or why he left his lane unintentionally.   As such, the Court concludes that Plaintiffs have presented enough evidence to allow a jury to determine whether his drug use and/or physical problems were the proximate cause of the collision.   Plaintiffs have further presented enough evidence to show that these issues were known or should have been known to the MCDs.

### 2.    Plaintiffs' Punitive Damage Claims

"Ordinarily, the imposition of punitive damages is a question for the jury." *Baumann v. Snider*, 243 Ga. App. 526, 530 (2000) (citation omitted).   "The peculiar facts and circumstances of a particular case, when supported by clear and convincing evidence of culpability, may cause ordinary negligence to give rise to the presumption that the conduct showed a conscious indifference to the consequences and an entire want of care." *Langlois v. Wolford*, 246 Ga. App.

209, 210 (2000).  "Punitive damages may be recovered when 'it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.'" *Tommy Roberts Trucking Co.*, 209 Ga. App. at 828 (quoting O.C.G.A. § 51-12-5.1(b)).

As noted in the above section, Plaintiffs have presented evidence that the MCDs failed to abide by their legal duty to investigate Mr. Binkley's driving history and safety record, assuming Ms. Binkley did not already know these facts.  Under Georgia law, an employer can be held liable for punitive damages based on its negligent hiring or retention if it actually knew of "numerous and serious violations on its driver's record, or, at the very least, . . . flouted a legal duty to check a record showing such violations."  *W. Indus., Inc. v. Poole*, 280 Ga. App. 378, 380 (2006) (citation omitted).  "Where there is evidence to support a finding that the employer did not comply with federal regulations in the hiring process of its drivers, courts have denied summary judgment on claims of negligent hiring."  *Meyer v. Trux Transp., Inc.*, No. CIV A 105CV-02686-GE, 2006 WL 3246685 at *8 (N.D. Ga. 2006) (emphasis added) (citing *Tommy Roberts Trucking Co.*, 209 Ga. App. at 828).

16

Here, Plaintiffs have presented evidence that the MCDs flouted their legal duty to check Mr. Binkley's safety history and driving record. Plaintiffs have shown, and Defendants do not dispute, that Mr. Binkley had a collision in Cobb County, Georgia, in 2013 that required post-collision testing. [Doc. 58-2 ¶¶ 30-31]. The MCDs' failure to investigate the 2013 collision, in conjunction with the MCDs' failure to perform a required pre-employment drug test or perform the required safety history inquiries, arguably shows a willful disregard for their obligations under the FMCSRs. Plaintiffs have also shown that in 2016, while Mr. Binkley was employed by Double L, he was cited for the same violation that he was cited for in this case, and the MCDs provided no corrective measures. [*Id.* ¶ 32]. These repeated instances of the MCDs' failure to comply with federal regulations in the hiring and retention process, including, but not limited to, obtaining driver histories, enforcing required drug and alcohol testing, training drivers on the FMCSRs, and performing annual reviews of drivers, present sufficient evidence of issues of fact to defeat summary judgment on the issue of punitive damages.

Additionally, Plaintiffs have presented evidence that a jury may find rises to the level of willful and intentional concealment of Mr. Binkley's medical conditions by Mr. Binkley, individually and/or by Double L. The numerous and consistent

concealment of medical conditions that the FMCSR require to be identified to be medically qualified to operate a tractor-trailer evince that entire want of care which would raise the presumption of a conscious indifference to the consequences.

Further, Mr. Binkley and Double L allegedly knew that Mr. Binkley had medical conditions that were so debilitating that he obtained a permanent disability placard from the State of Indiana. Moreover, Mr. Binkley was taking more Sinemet than recommended by his physician in conjunction with a narcotic, Norco, that his primary care doctor was not even aware he was taking. Plaintiffs presented evidence that these two drugs have potential side effects that impact the operation of motor vehicles. Further, there is no evidence in the record that a medical examiner saw Mr. Binkley after he started taking Norco. As such, the interaction of these two drugs has not been evaluated by a DOT medical examiner. Defendants concede that Mr. Binkley was using these two prescriptions on the date of the collision. Mr. Binkley, therefore, knowingly drove on the date of the subject collision while arguably under the influence of these two prescription drugs, knowing that they have serious possible side effects, including falling asleep without warning. There is no evidence in the record that Mr. Binkley was told by a physician that it was safe to operate a tractor-trailer while under the influence

of Norco or Norco and Sinemet together.   The combination of Mr. Binkley's medical conditions and the concealment of those medical conditions, along with the prescription medications he was taking, is sufficient for a jury to find that Mr. Binkley and the MCDs acted with that entire want of care which would raise the presumption of conscious indifference to the consequences.

Plaintiffs also claim they are entitled to punitive damages because there, at a minimum, should be a rebuttable presumption that Mr. Binkley was under the influence of drugs and alcohol at the time of the subject collision.   Defendants argue that spoliation sanctions are not appropriate because Mr. Binkley allegedly did not know of his obligation to take a drug and alcohol test following the collision.   Leaving aside the issue of any spoliation sanction, as no such motion has been filed, it is likely that the jury will nonetheless be informed that Mr. Binkley did not take a required drug and alcohol test after the subject collision. It would be reasonable for the jury to infer, as the Plaintiffs will surely argue, that Mr. Binkley did not undergo the required testing because he was under the influence of drugs or alcohol.   See *Langlois v. Wolford*, 246 Ga. App. 209 (2000), (where the Georgia Court of Appeals found the fact that the defendant left the scene of the collision gave rise "to the reasonable inference that flight was from a sense of guilt." *Id*. at 211.)  Construing the evidence most favorably for Plaintiffs,

this Court finds that Mr. Binkley's failure to undergo required drug and alcohol testing after the collision creates an issue of fact that precludes summary adjudication.

In sum, construing the evidence in the light most favorable to Plaintiffs, the jury would be entitled to find that Mr. Binkley and the MCDs acted willfully, wantonly, and with such a want of care as to entitle the jury to determine that they acted with a conscious indifference to the consequences of their acts. Accordingly, this Court hereby **DENIES** Defendants' Motion for Partial Summary Judgment as to punitive damages.

### 3.    Plaintiffs' Claims Pursuant to O.C.G.A. § 13-6-11

O.C.G.A. § 13-6-11.  O.C.G.A. § 13-6-11 states:

> The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

"[Q]uestions concerning bad faith, stubborn litigiousness, and unnecessary trouble and expense, under O.C.G.A. § 13-6-11, are generally questions for the jury to decide." *Am. Med. Trans. Grp. v. Glo-An, Inc.*, 235 Ga. App. 464, 467 (1998) (quoting *Backus Cadillac-Pontiac v. Ernest*, 195 Ga. App. 579, 581 (1990)).  Bad faith, under O.C.G.A. § 13-6-11, "is bad faith arising out of the transaction upon

which the complaint is based and refers to a time prior to the institution of action." *Brannon Enters. v. Deaton*, 159 Ga. App. 685, 685 (1981) (citation omitted).  The allegation of bad faith "must relate to the acts in the transaction itself prior to the litigation, not to the conduct during or motive with which a party proceeds in the litigation."  *Fresh Floors, Inc. v. Forrest Cambridge Apartments*, 257 Ga. App. 270, 271 (2002) (citation omitted).

Here, Plaintiffs contend that they are entitled to attorney's fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11 because Defendants have acted in bad faith and been stubbornly litigious.  Plaintiffs assert that evidence of bad faith in the present case is demonstrated by the same evidence that Plaintiffs allege warrants punitive damages.  Defendants argue there was no bad faith and that Plaintiffs' claims relating to stubborn litigiousness must fail because Mr. Binkley has admitted fault.  Whether Mr. Binkley admitted fault or not, however, is not determinative.

As some evidence suggests, Mr. Binkley was not physically and medically qualified to operate a tractor-trailer, was using narcotics and possibly under the influence of drugs and alcohol at the time of the collision.  He also did not submit to required drug testing, and the MCDs didn't comply with the federally required background and driver's history checks, even assuming that they weren't already aware of Mr. Binkley's background and history.

Plaintiffs cite *Windermere, Ltd. v. Bettes*, 211 Ga. App. 177, 179 (1993), in support of their claims that damages under O.C.G.A. § 13-6-11 are warranted based on these facts.  In *Windermere*, the Georgia Court of Appeals held:

> Indicative of whether a party acts in good or bad faith in a given transaction is his abiding by or failing to comply with a public law made for the benefit of the opposite party, or enacted for the protection of the latter's legal rights.  Evidence that appellants failed to comply with mandatory safety regulations promulgated for the benefit of appellees is some evidence that appellants acted in bad faith in the transaction, within the meaning of O.C.G.A. § 13-6-11.

*Id*. (internal citation omitted).  The court in *Windermere* affirmed the denial of the defendant's motions for directed verdict and J.N.O.V. where the plaintiffs were injured when they jumped out of the second story of a burning building because the exits in the building were not safe to use and evidence showed that the defendant failed to comply with safety features for isolating exits from fire as mandated by applicable building exit and fire codes.  *Id*. at 178-79.

Accordingly, viewed in the light most favorable to Plaintiffs, Plaintiffs have presented sufficient evidence to defeat summary judgment on bad faith.  Thus, the Court hereby **DENIES** Defendants' Motion for Partial Summary Judgment on Plaintiffs' claim for attorney's fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

### 4.      Negligence Per Se Against Double L

Finally, Defendants are also seeking summary judgment on Plaintiffs' negligence per se claim against Double L.  Defendants claim the negligence per se claim must fail because there is no causal connection between Double L's alleged violations of the applicable laws and regulations and the subject collision.  The Court addressed this above in the negligent hiring, training, retention, supervision, and entrustment claims section, and, accordingly, **DENIES** Defendants' Motion for Partial Summary Judgment as to the negligence per se claim.

## II.      DEFENDANTS' MOTION TO EXCLUDE

Defendants have also moved to exclude the testimony of Plaintiffs' trucking expert, Brian Stevens.  [Doc. 57].  Although Defendants have styled their Motion as a *Daubert* motion, Defendants do not seek to exclude Mr. Stevens on his qualifications or methodology.   The primary reason that Defendants seek the exclusion of Mr. Stevens' testimony relates to relevance.  This is evidenced by the fact that the five subheadings in Defendants' Argument and Citation of Authority section all seek the exclusion of specific testimony by Mr. Stevens because it is "irrelevant."  [*See* Doc. 57-1 at 16-24].  Some of Defendants' other criticisms of Mr. Stevens' opinions would go to the weight of his testimony, rather than the admissibility, and would be better handled through cross-examination.  Further,

since evidence has not yet been presented to the jury, nor have motions *in limine* been filed and ruled upon, many of Defendants' criticisms of Mr. Stevens' testimony will likely be covered *in limine* rulings or will be better addressed through objections during trial based on the evidence presented.   Accordingly, the Court hereby **DENIES** Defendants' Motion to Exclude the Testimony of Plaintiffs' Expert Brian Stevens [Doc. 57], but notes that the Court is willing to consider further argument on these matters in subsequent motions *in limine* or during trial.

## III.    CONCLUSION

For the forgoing reasons, Defendant Berkshire Hathaway Insurance Company, Linda Binkley d/b/a Double L Produce, and Jerry Binkley's Motion for Partial Summary Judgment [Doc. 58] is hereby **DENIED**.   Additionally, Defendants Berkshire Hathaway Homestate Insurance Company, Linda Binkley d/b/a Double L Produce, and Jerry Binkley's Motion to Exclude Testimony of Plaintiffs' Expert Brian J. Stevens [Doc. 57] is hereby **DENIED**.

**IT IS SO ORDERED**, this 24th _day of September, 2020.

WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE